IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| ANNUNZIATA O. GOULD and JAMES S. GUILD, | ) ) ) | |
| Plaintiffs, | ) ) ) | TC-MD 210019R, 210045R, 210046R, 210050R, 210051R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | **ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT AND DENYING SUMMARY JUDGMENT** |
| Defendant. | ) | **FOR PLAINTIFFS** |

This matter comes before the court on parties' cross motions for summary judgment.

Oral argument on the motions was held January 27, 2022. Plaintiffs were represented by Matin

Hansen, an Oregon attorney, of Francis Hansen & Martin, LLP. Defendant was represented by

Assistant Attorney General Sam Zeigler.

## I. STATEMENT OF FACTS

At issue is the treatment of Plaintiffs' substantial overpayments for the 2013 through

2017 tax years.[1] (Ptfs' Mot for Summ J, Stip Facts, Ex A at 1.) Plaintiffs made 18 estimated

payments during the relevant tax years totaling $875,000. (*Id*. at 8.) Despite making substantial

estimated payments during those years, Plaintiffs did not file their 2013 through 2017 tax returns

until early November 2020, and January 2021.[2] (*Id*.) Plaintiffs' total tax liability for tax years

2013 through 2017, combined with interest for underpayment of estimated tax during those

---

[1] Case number 210050R appeals the 2013 tax year; case number 210045R appeals the 2014 tax year; case number 210019R appeals the 2015 tax year; case number 210046R appeals the 2016 tax year; and case number 210051R appeals the 2017 tax year.

[2] On November 5, 2020, Plaintiffs filed their 2014 and 2015 returns—Defendant processed the 2015 return first. (Ptfs' Mot Summ J, Stip Facts, Ex A at 5.) On November 9, 2020, Plaintiffs filed their 2013 return. (*Id*. at 3.) On December 28, 2020, Plaintiffs filed their 2016 return. (*Id*. at 6.) Finally, on January 19, 2021, Plaintiffs filed their 2017 return. (*Id*.)

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT AND DENYING
SUMMARY JUDGMENT FOR PLAINTIFFS   TC-MD 210019R                                    1

years, was $462,053.  (*Id*.)  In total, Plaintiffs overpaid their 2013 through 2016 taxes by $412,947—which they asked to be applied as a credit against future estimated taxes.  Defendant sent notices for each tax year denying the credit.  The notices explained that:

> "Because we received your return more than three years after the due date, your refund is limited to the amount of payments you made in the past two years. We can't issue the full refund amount or apply it against tax for another year."

(citing ORS 314.415(2)(a) and OAR 150-314-0240.)  Plaintiffs filed written objections with Defendant, each of which was denied.

Although the 2012 tax year is not at issue in this case, Plaintiffs' overpayment for that year of $177,691 was applied towards their 2015 taxes.  (Ptfs' Mot Summ J, Stip Facts, Ex A at 1-2.)  Defendant received Plaintiffs' 2012 return on July 30, 2015, two years and over three months after its original April 15, 2013, due date.  (*Id*.)  Plaintiffs reported an overpayment of $177,911.  (*Id*., Ex A at 1-2; Ex B.)  Plaintiffs elected on the return to have the overpayment applied towards Plaintiffs' estimated taxes for the 2013 tax year.  (*Id*., Ex A at 1-2.)  Defendant later adjusted this overpayment amount by the interest due for underpayment of estimated tax due in 2012, for a total of $177,691 to be applied towards the 2013 return.  (*Id*.)  Because the next return Defendant received from Plaintiffs was the 2015 tax return, Defendant credited this overpayment towards Plaintiffs' 2015 liability—Defendant did not apply the overpayment towards Plaintiffs' 2013 return.  (*Id*. at 5.)[3]

## II.  ANALYSIS

The issue in this case is whether a taxpayer who tenders timely estimated tax payments but does not file their personal income tax return within three years of the date the return is due

---

[3] The parties submitted additional and very detailed accountings for each tax year, however, a complete recitation here would not be helpful to an analysis of the issues in this case.

or make payments within two years from the date a refund or credit is requested, is entitled to a credit of overpayment for a subsequent tax year pursuant to ORS 316.583(3).

Plaintiff's Motion for Summary Judgment (Motion) seeks to compel Defendant to carry forward overpayments from estimated tax payments to future years' tax liabilities. Plaintiff asserts that they are not bound by a three-year limitation period on refunds pursuant to ORS 314.415(2)(a)[4] because (1) they are seeking a credit and not a refund, and (2) their estimated payments are not "deemed paid" until their late return was filed which means their payment was made within two years of the filing of their return and thus they are entitled to a refund or credit of the excess amounts paid. Defendant asks this court to uphold the determinations documented in the Notices of Proposed Refund Adjustment for the 2013 through 2017 tax years denying taxpayers credits for overpayments when the estimated payments were tendered more than three-years after the returns were due. Defendant contends that ORS 316.583(3) should not be construed as extending the statute of limitations on overpayments.

A.    *Summary Judgment*

Tax Court Rule Magistrate Division (TCR-MD) 13 B allows the court to apply Tax Court Rule (TCR) 47 for motions for summary judgment to the extent relevant. TCR 47 C provides that the court will grant a motion for summary judgment "if the pleadings, depositions, affidavits, declarations, and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party"

---

[4] References to the Oregon Revised Statutes (ORS) are to the 2015 edition. No changes were made between the 2011 and 2015 to the relevant statutes, so the same substantive provisions apply to all tax years at issue.

on the matter.  TCR 47 C.  The court agrees with the parties that there are no disputed issues of material fact.

B.       *ORS 314.415 and ORS 316.583*

Oregon courts begin their statutory analysis by looking at the text and context of a statute. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).  This case concerns a supposed conflict between ORS 314.415 and ORS 316.583.  Thus, the court begins with the relevant statutes at issue.

ORS 314.415(1) establishes that the department shall issue a refund for excess taxes paid. However, that statute places limits on the time during which a refund may issue; "[t]he department may not allow or make a refund after three years from the time the return was filed or two years from the time the tax (or a portion of the tax) was paid, whichever period expires later * * *."  ORS 314.415(2)(a).  "[I]f the original return is not filed within three years of the due date, excluding extensions, of the return, the department may allow or make a refund only of amounts paid within two years from the date of the filing of the claim for refund."  *Id*.  If the time for a refund has lapsed under this statute, "the department may not allow the excess as a credit against any tax occurring on a return filed for a subsequent year."  *Id*.

In the context of estimated taxes, ORS 316.583(3) provides that

"If there is an overpayment of income taxes for a taxable year, and the taxpayer elects on a return (including an amended return) for that taxable year filed *after the due date* (determined with regard to any extension of time for filing) to have the overpayment credited against an installment of estimated tax for a subsequent taxable year, the overpayment shall be credited against that installment of estimated tax. *The amount credited shall be deemed paid as estimated tax on the date the return was filed.*"

(Emphasis added.)  Consider a simplified fact pattern to illustrate the parties' positions: Plaintiffs timely pays estimated taxes but fails to file their 2013 tax return until 2020.  Under Plaintiffs'

approach, the estimated payments made in 2013 would not be *deemed paid* under ORS 316.583(3) until 2020, when their return was filed. Because the estimated payment is not considered deemed paid until 2020, Plaintiffs have paid within two years of their late filed return. This places the taxpayer's payments within the two-year deadline of ORS 314.415(2)(a) and entitled to a refund or credit. Under Defendant's approach, the estimated payments made in 2013 are considered paid on the original due date for filing the return in April of 2014 under ORS 316.417. (Def's Reply at 4.) Because Plaintiffs' return was filed after the three years provided for in ORS 314.415(2)(b) and the estimated tax payments are considered "paid" in 2014, no amount can be refunded or credited. (*Id*. at 5.)

ORS 316.417 provides that "[a]n advance payment of any portion of the tax made at the time the return was filed is considered as made on the last day prescribed by law for the payment of the tax, or if the taxpayer elected to pay the tax in installments, on the last day prescribed for payment of the first installment." The last day for payment of personal income taxes is the on or about April 15 of the next tax year. *See* ORS 314.395 ("tax shall be paid to [Defendant] at the time fixed by ORS 314.385 for filing the return without regard to extensions'); ORS 314.385 ("returns shall be filed * * * on or before the due date for the corresponding federal return for the tax year"). In general, estimated payments are made in four equal installments, the first of which is due on or about April 15 of the taxable year. ORS 316.579; ORS 316.577.

Defendant's argument that a taxpayer could indefinitely "bank" estimated payment is persuasive. Based on Plaintiffs' reading, a taxpayer could file estimated payments and then wait 50 years to file their tax return and get full credit for those estimated taxes less any failure to file penalty. Even taking into account the fact that no interest would accrue under ORS

/ / /

314.415(2)(e), it seems unlikely that the legislature would have intended to create this exception applicable only to estimated taxes (but not taxes paid or withheld by employers).

Defendant cited numerous cases none of which support Plaintiffs' reading of ORS 314.415: *Jones v. Dept. of Rev.*, 15 OTR 92 (2000) (holding that estimated payment of $10,000 could not be refunded under *former* ORS 314.415 (1997) where payment was made in 1994 and the return was filed in 1998); *Dennis v. Dept. of Rev.*, TC-MD 091424D, WL 3809999 (Or Tax M Div, Sept 8, 2010) (denying refund where taxpayer filed return past the three year period in ORS 314.415(2)(a) and no evidence was presented regarding payments made within two years of return filing) and *Gann v. Dept. of Rev.,* TC-MD 091232C, WL 4021155 (Or Tax M Div, Nov 13, 2009) (holding that estimated payments that cannot be refunded under ORS 314.415(2)(a) cannot be applied against future estimated taxes).  Plaintiffs assert that a credit for estimated tax credit is not a refund, and therefore ORS 314.415(2)(a) does not apply.  Plaintiffs argue the issue is controlled simply by ORS 316.583(3), which has no time limit.  Defendant, on the other hand, asserts that ORS 314.415(2)(a) applies to both refunds and the credit available under ORS 316.583(3).  The only case that seems related as it refers to ORS 316.583 and estimated payments is *Sullivan v. Dept of Rev.*, TC-MD 080833C, WL 6085679, (Or Tax M Div, Sept 19, 2008).  *Sullivan* appears to consider whether a refund that is otherwise barred as untimely under ORS 314.415 may nonetheless be credited as an estimated payment under ORS 316.565 to ORS 316.583.  *Id*. at *2.  The court held that refunds barred as untimely could not be credited as estimated payments.  *Id*.  ORS 316.583 has not changed since the time that case was decided and the tax years at issue in this case.  Additionally, the court finds nothing in 2005 changes to ORS 314.415 that would require a different result.

/ / /

The court tentatively concludes that, based the text and context, Defendant's reading of the statute is more persuasive, however, the court will still consider legislative history.

C.     *Legislative History*

There is no requirement of ambiguity for courts to consider legislative history so long as it can be useful for its analysis. *Gaines,* 346 Or at 171-172. The court looks to legislative history and legislators' comments in amendments to ORS 314.415 and ORS 316.583.

1.     *ORS 314.415 (Time for Claiming a Refund)*

In 2005 the Oregon Legislature considered HB 2448 which proposed amendments to ORS 314.415. HB 2448 passed with little debate or controversy. Only Chair R. Thomas Butler (Chair Butler) commented on the proposed amendment, and the bill passed without objection at every stage. In the excerpt of the provision below, the text that is italicized and in brackets was deleted by HB 2448; the text in bold was added by HR 2448:

> [*(b)(A)*] **(2)(a)** [*No refund shall be allowed or made*] **The department may not allow or make a refund** after three years from the time the return was filed, or two years from the time the tax **(or a portion** [*thereof*] **of the tax)** was paid, whichever period expires [*the*] later, unless before the expiration of [*such*] **this** period a claim for refund is filed by the taxpayer in compliance with ORS 305.270**.**[*, nor shall a refund claimed on an original return be allowed or made in any case unless the return is filed within three years of the due date, excluding extensions, of the return in respect of which the tax might have been credited.*] **In any case, if the original return is not filed within three years of the due date, excluding extensions, of the return, the department may allow or make a refund only of amounts paid within two years from the date of the filing of the claim for refund.** If a refund is disallowed for the tax year during which excess tax was paid for any reason set forth in this [*paragraph, the excess shall not be allowed*] **subsection, the department may not allow the excess** as a credit against any tax occurring on a return filed for a subsequent year."

HB 2448 (2005).

/ / /

The 2005 amendments were to fix an anomaly in the treatment of late filers.[5] The Staff Measure Summary for HB 2448 explained the amendments to the bill: "[p]ermits the Department of Revenue to refund amounts determined to be overpayments on original tax returns which were filed more than 3 years after the due date. Limits the refund amount to the amounts paid within 2 years from the date of filing of the claim for refund * * *." House Revenue Committee, HB 2448, Feb 9, 2005, Ex 3 (Staff Measure Summary). The text focuses on creating a three-year deadline that taxpayers could overcome if they had paid within two years of filing.

Limited debate or comments on this amendment leave the court with little insight into the legislators' thoughts. However, Chair Butler did speak on the issue and having been exposed to this issue in his own practice. He commented that the amendment would "create [ ] a more equitable situation for taxpayers" who have not filed for multiple years and give them "an opportunity to come even * * * and file their tax returns." Testimony, House Revenue Committee, Feb 9, 2005 (statement of Chair Thomas Butler). This language of equity and opportunity suggests that legislature intended to have late filers treated similarly, without regard to whether it is taxpayer or the department that makes a subsequent adjustment to the return. The legislative history does not demonstrate that the changes to ORS 314.415(2)(a) were intended to

_____

[5] In her written testimony to the House Committee on Revenue, Debra Buchanan, Finance Director for the Department of Revenue identified the anomaly as follows:

"Example 1: Bob had $1,500 of tax withheld from his 2000 wages. Bob didn't file his return by April 15, 2001, the due date, but did pay an additional $1,000 on April 15, 2003. On June 15, 2004 Bob filed his 2000 tax return requesting a $500 refund. The refund must be denied because his claim for a refund was filed more than 3 years after the due date of the return.

"Example 2: Sam had $1,500 of tax withheld from his 2000 wages. Sam did not file his 2000 return by April 15, 2001 but did pay an additional $500 on April 15, 2003. On June 15, 2004 Sam filed his 2000 tax return and calculated tax due of $500 which he paid with the return. In processing the return, the department determined Sam made an error and actually overpaid his tax by $500. Because Sam didn't file a claim for refund, the department may issue Sam a refund of $500, which is the amount of tax Sam paid in the two years preceding the filing of his return.
* * * * *
"HB 2448 would provide consistent treatment of taxpayers by allowing a refund of tax paid within the two year period prior to the date the return is filed."

House Revenue Committee, Feb 9, 2005, Ex 5 (statement of Buchanan).

have any impact on taxpayers filing estimated taxes—the topic did not come up. The legislature also did not discuss the court's prior holding in *Jones*, 15 OTR 92, which held that estimated taxes could not be refunded where the payment was made in 1994 but the return was not filed until four years later.

2.        *ORS 316.583 (Estimated Taxes)*

In 1993 the legislature considered HB 2058, which among other changes, added section 3 to ORS 316.583:

> "If there is an overpayment of income taxes for a taxable year, and the taxpayer elects on a return (including an amended return) for that taxable year filed after the due date (determined with regard to any extension of time for filing) to have the overpayment credited against an installment of estimated tax for a subsequent taxable year, the overpayment shall be credited against that installment of estimated tax. The amount credited shall be deemed paid as estimated tax on the date the return was filed."

HB 2058 clarified that an estimate tax is not considered "paid" for the subsequent year until a late return is filed. This removed the inequitable treatment of taxpayers by "treat[ing] them the same whether they asked for the overpayment to be applied to estimated tax or whether they asked for a refund and asked it to be applied to their other delinquent account." Tape Recording, House Committee on Revenue and School Finance, Subcommittee on Income Taxation, HB 2058, Jan 28, 1993, Tape 7, Side B (Statement of Jim Bucholz, Oregon Department of Revenue). This legislative intent seems to suggest that this bill was simply acknowledging that the overpayment credit should be taken into account as an estimated payment for the subsequent year when the election is made—consistent with good accounting practices. Nothing in the legislative history suggests that this was an extension of the statute of limitations under ORS 314.415 or was attempting to define when estimated taxes are considered "paid" for the current tax year.

/ / /

Plaintiffs' reading of the statutes is creative, but the court is not convinced that when the legislature amended ORS 314.415 and ORS 316.583, they intended to radically change the limitation period for taxpayers to request a tax refund or credit. The legislative history simply does not support Plaintiffs' position.

D.     *Equity*

Plaintiffs argue that "Oregon tax law requires fairness and equity which entitles Plaintiffs to relief." (Ptfs' Mot Summ J at 11.) While ORS 305.425(3) provides that the Tax Court is required to maintain "rules of equity practice and procedure" it is generally not a court of equity. *DeArmond v. Dept. of Rev.*, 14 OTR 112, 118 (1997), *aff'd*, 328 Or 60 (1998) ("[R]easonableness in procedures is in the same category of fairness in substance: both are matters for the legislature.") Nevertheless, the court does want to recognize the bigger picture of this issue. From an equitable perspective the result here is harsh – Plaintiffs are losing the benefit of a large overpayment they made to the state. Yet, this extremely rare situation is of Plaintiffs' own making – they choose to blindly send in money to the state and then ignored their obligation to file a return for many years. A legal maxim says "hard cases make bad law" but in this instance, it appears that a hard law makes bad cases.

## III.  CONCLUSION

The court concludes that ORS 316.583(3) does not alter the statute of limitations contained in ORS 314.415(1)(a) and that a credit or refund is available to taxpayer only on a return filed within the three years provided in ORS 314.415 or for amounts paid within two years of the filing of the tax return. Because Plaintiffs filed their return after the three-year deadline and did not make payment within two-years of filing of the return, there are no overpayments to credit for the subsequent tax years under ORS 316.583(3). Accordingly, Plaintiffs' motion for

summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

Now, therefore,

IT IS ORDERED that Plaintiffs' motion for summary judgment is denied.

IT IS FURTHER ORDERED that Defendant's cross-motion for summary judgment is granted.

_____

***This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.***

***This document was signed by Magistrate Davis and entered on August 31, 2022.***